Perry and Mary PROBUS, Appellants,

v.

Joseph SIRLES, Appellee.

Court of Appeals of Kentucky.

Aug. 4, 1978.

As Modified Oct. 13, 1978.

Charles M. Friedman, Richard J. Frockt, Frockt & Klingman, Louisville, for appellants.

Gerald R. Toner, S. Lloyd Cardwell, Stites, McElwain & Fowler, Louisville, for appellee.

Before MARTIN, Chief Judge, and HOGGE and WILHOIT, JJ.

HOGGE, Judge.

Perry and Mary Probus appeal from an order of the Jefferson Circuit Court dismissing their complaint against the appellee, Joseph Sirles, in which they had sought damages for personal injuries resulting from an automobile accident. The ground for the order was that the Probuses were precluded from maintaining a suit for common law negligence by the provisions of the Motor Vehicle Reparations Act. Neither Perry nor Mary had rejected the Act's limitation on their tort rights, as permitted by KRS 304.39–060(4), and it

was, and is now, alleged that Perry and Mary are therefore bound by the provisions of the Act as they are an automobile owner/operator and user/operator, respectively.

Several arguments are raised in the appeal. These include the assertion that the application of the Motor Vehicle Reparations Act to appellants would violate their constitutional rights, and that Mary's tort rights are not limited by the provisions of the Act.

■ At the time of the accident in question, Perry Probus owned an automobile, but had no policy of automobile insurance in force, as he was unemployed and unable to purchase coverage. Mary Probus also had no automobile insurance. She did not own a car and had only recently obtained an automobile operator's license and, other than her efforts to learn how to drive and become licensed, had not yet begun to drive. At the time of the accident she was riding as a passenger in her husband's car. Because of the contention that Mary was not an automobile operator user or operator and the fact that she was not a member of a household in which the operator of a motor vehicle had an insurance policy with basic reparations benefits coverage, appellants contend that there was no limitation on Mary's tort rights.

The question presented to us has never been specifically answered in the reported decisions of Kentucky courts. In *Fann v. McGuffey,* Ky., 534 S.W.2d 770, 774 at n. 19 (1975), the Supreme Court made the following statement:

> We leave open the question of how much operation or use will suffice to make one an operator or user who is fully subject to no-fault limitations on his rights of recovery, except to say that a person who has not operated or used an automobile after July 1, 1975, the effective date of the act, could not constitutionally be deemed to have accepted such limitations.

However, the Supreme Court did state that the limitation upon recovery for pain, suffering, mental anguish, and inconvenience would not apply to an injured pedestrian unless at the time of the accident he owns or maintains an automobile, or is an operator or user in the sense that upon occasion he drives, uses, or has driven or used an automobile on the roadways of this state.

It is common knowledge that the process of learning to drive an automobile (or to operate any other new, complex piece of machinery) involves numerous practice sessions. One must learn use of the brake and gas pedal, to steer the car through streets, to park, and to coordinate these actions with observation of signs and highway signals in order to be prepared for the licensing examination. During this process the new driver makes use of Kentucky highways, and automobile accidents are always a possibility. The movement of the car in traffic, and under various roadway and weather conditions brings into play the very concerns which motivated enactment of the Motor Vehicle Reparations Act. KRS 304.-39–010.

We feel that the driving of an automobile by Mrs. Probus while preparing for her license, the fact that she is now a licensed driver, and presumably will continue to drive, make her an operator or user within the meaning of KRS 304.39–020.

■ The next issue raised by the appellants is whether a driver or owner of an automobile preserves his constitutional right to sue for damages caused by another in an automobile accident where he does not have automobile liability insurance coverage at the time of the accident and where the provisions of the Motor Vehicle Reparations Act would otherwise apply.

This court has had occasion to consider the question of whether an uninsured motorist is subject to the limitations of "no-fault" in *Atchison v. Overcast,* Ky.App., 563 S.W.2d 736, 737 (1977), in which we stated "[t]he plain intent of the above language [of KRS 304.39–030 and 304.39–060] is that all persons owning an automobile, whether insured or not, are subject to the limitations of "no-fault", unless the owner actually rejects the limitation of his tort rights and

liabilities . . . ." See also *Dixon v. Cowles,* Ky.App., 562 S.W.2d 639 (1977).

The appellants allege that the no-fault insurance law violates certain sections of the Kentucky Constitution, including Sections 7, 14, and 54. The arguments raised by appellants have been considered by the Court of Appeals of Kentucky in *Fann v. McGuffey,* Ky., 534 S.W.2d 770 (1975) and have been rejected, on the grounds that any person who uses Kentucky highways impliedly consents to the conditions of Kentucky's no-fault system.

The appellants next argue that a person may not be deprived of his constitutional right to file suit or defend an action under the Constitution of Kentucky for injuries where he is indigent and unable to afford liability insurance premiums. It is contended that KRS 453.190 recognizes the right of the indigent person to sue by granting the authority to allow a poor person to bring suit or defend any action without paying costs, and that so much of the No-Fault Act as denies the right to bring suit or defend an action on the grounds of economics is unconstitutional.

■ We recognize the fact that where a nonindigent person would have a right to bring suit or defend an action under similar circumstances, an indigent person may not be precluded from exercising the same right by his inability to pay costs. KRS 453.190; *Lay v. Commonwealth,* Ky., 506 S.W.2d 507 (1974). However, a nonindigent person who, like appellants, had elected to use Kentucky highways, and had not rejected the limitations on tort liability in the no-fault plan, would not be able to recover in tort as the appellants are attempting to do. By being precluded from bringing this suit, appellants are not being discriminated against by reason of economics, but rather are requesting privileges not available to a person who has been able to afford no-fault coverage, and has not rejected abrogation of his tort rights. Appellants had the right to reject limitations on their tort rights, but have not done so.

■ If appellants argument is construed as a complaint that, because of inability to pay premiums, they are precluded from obtaining any type of redress for their injuries, even the limited basic reparations benefits [which was held to be the law in *Thomas v. Ferguson,* Ky.App., 560 S.W.2d 835 (1978)], we are still of the opinion that their constitutional rights have not been violated. In *Fann v. McGuffey,* Ky., 534 S.W.2d 770, 778 (1975), the Court of Appeals recognized the state's undoubted authority to place conditions upon the use of its highways, including the power to require liability insurance. Equal protection does not require identical treatment for all people; the state retains the power to treat different classes of persons in different ways if the classification has a reasonable basis. *Robinson v. Board of Regents of Eastern Kentucky University,* 475 F.2d 707 (6th Cir. 1973); *Board of Education of Louisville v. Board of Education of Jefferson County,* Ky., 522 S.W.2d 854 (1975). See also *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

As the Supreme Court noted in *Hess v. Pawloski,* 274 U.S. 352, 356, 47 S.Ct. 632, 633, 71 L.Ed. 1091 (1927), "[M]otor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property." The legislature could properly determine that that group of persons who are not financially prepared to assume responsibility for the risks to which the general public is exposed due to their driving shall not be permitted to use the highways without making provision for insurance.

The final issue raised by the appellants is that the no-fault insurance system violates Article I of the United States Constitution and the Fourteenth Amendment in that it abridges their privileges and immunities as citizens and impedes the flow of interstate commerce.

■ The Commerce Clause of the United States is not to be construed as an absolute bar to any type of local legislation affecting

travel in any manner. It has been said that "a state may exercise its power to make regulations for the protection of the health and property of its citizens against dangers arising from interstate commerce if such regulation does not conflict with federal legislation and does not impose a substantial burden on interstate commerce." 15 Am.Jur.2d *Commerce* § 26.

 In *Chicago v. Atchison, Topeka, and Santa Fe Railway Company,* 357 U.S. 77, 88, 78 S.Ct. 1063, 2 L.Ed.2d 1174, 1183 (1958), it became apparent that local legislation imposing certain monetary costs for use of highways could be constitutionally upheld: " . . . the city retains considerable authority to regulate how transfer vehicles shall be operated. It could hardly be denied, for example, that such vehicles must obey traffic signals, speed limits and other general safety regulations. Similarly the city may require registration of these vehicles and exact reasonable fees for their use of the local streets." See also 7 Am.Jur.2d *Automobiles and Highway Traffic* § 21.

As the Supreme Court stated in *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 523, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003, 1006 (1959), "[t]he power of the State to regulate the use of its highways is broad and pervasive. . . . The regulation of highways 'is akin to quarantine measures, game laws, and like local regulations of rivers, harbors, piers, and docks, with respect to which the state has exceptional scope for the exercise of its regulatory power, and which, Congress not acting, have been sustained even though they materially interfere with interstate commerce.' *Southern Pacific Co. v. State of Arizona,* 325 U.S. 761, 783, 65 S.Ct. 1515, 1527, 89 L.Ed. 1915."

We do not believe the no-fault legislation imposes a substantial burden on interstate commerce, and there is no contention that it conflicts with any federal legislation. We hold that the legislation is not violative of the commerce clause.

 Appellants contend that the Act deprives them of their constitutionally protected right to travel. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The legislation in question is a regulation of one particular means of travel rather than as a general deterrent to the right to travel. We note that the Supreme Court has upheld a Maryland statute imposing automobile registration fees against the contention that it violated the right to travel. *Hendrick v. Maryland,* 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385 (1915). We do not regard the statute as "unreasonably burdening or restricting" a citizen's freedom of interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and we hold that the Motor Vehicle Reparations Act is constitutionally valid.

The judgment is affirmed.

ALL CONCUR.