**SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Richard J. BROWN, et al., Defendants.**

**Civ. A. No. 94–0481–L(S).**

United States District Court,
W.D. Kentucky,
at Louisville.

May 2, 1995.

("Safeco"). For the following reasons, defendant's motion will be granted.

## I

Safeco's complaint alleges that on November 7, 1992 Richard J. Brown ("Brown") negligently operated a motor vehicle owned by the United States. According to Safeco, Brown's negligence caused him to collided with another vehicle owned and operated by W.C. Clark, in which Toni Clark was a passenger. It is further alleged that at the time of the accident, Safeco was the automobile insurance carrier for W.C. Clark and that Brown was acting in the course and scope of his employment as a postal carrier for the United States Postal Service.

Safeco, as the "no-fault" carrier for Toni Clark paid personal injury protection benefits to her in the amount of $5,248. Through this subrogation action, Safeco now seeks to recover these amounts from the United States.[1] The United States moves to dismiss on the grounds that (1) it is immune from liability and (2) under the Kentucky no-fault statute, it is a "secured person" against whom subrogated rights may not be asserted.

## II

Under the Federal Tort Claims Act ("FTCA"), the liability of the United States is determined by the law of the place where the accident occurred. 28 U.S.C. § 1346(b). Accordingly, Kentucky's no-fault statute controls. *Id.*

Kentucky's no-fault statute was enacted to provide for prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident. KRS 304.39–010(2). Under Kentucky's system, the first $10,000 worth of injuries, otherwise known as "basic reparation benefits,"[2] is

Dennis J. Hummel, Hummel & Coan, Louisville, KY, for plaintiff.

David L. Huber, Asst. U.S. Atty., Louisville, KY, for defendants.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter stands submitted on motion by defendant, United States of America ("United States"), to dismiss the complaint of plaintiff, Safeco Insurance Company of America

---

1. Safeco's complaint originally named Brown, the United States Postal Service, and the United States as defendants. Pursuant to 28 U.S.C. § 2679(d)(2), the United States certified that Brown was acting within the scope of his office or employment at the time of the accident. The Federal Employees Liability Reform and Tort Compensation Act provides that a suit against the United States shall be the exclusive remedy for persons claiming damages from a federal employee's negligence when such negligence was committed within the scope of the employee's employment. 28 U.S.C. § 2679(b)(1). Therefore, the United States was substituted as the sole defendant in this action.

2. Often referred to as personal injury protection (PIP) or no-fault benefits.

paid without regard to fault. KRS 304.39–040(1). The obligation to pay these benefits is imposed on a "reparation obligor," *i.e.,* an insurer, self-insurer, or obligated government. KRS 304.39–040(2); KRS 304.39–020(13). Hence, if the driver of Car A is negligent and hits the driver of Car B, it is likely the reparation obligor of driver B who assumes responsibility for the first $10,000 worth of injuries to driver B. *See* KRS 304.39–050(1). This, however, does not leave the reparation obligor of driver B without a remedy. The statute provides:

> (2) A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person.

> (3) A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person. . . .

KRS 304.39–070.

The sole issue in this case is whether, under Kentucky law, a reparation obligor (Safeco), may recover basic reparation benefits paid to its basic reparation insured (Toni Clark) through a subrogation action asserted against the United States. Surprisingly, this appears to be a matter of first impression in Kentucky.

The United States' initial argument rests on the well-established principle that it cannot be sued absent an express waiver of sovereign immunity. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70 (1941). Pursuant to the FTCA, the United States has waived its immunity with respect to certain torts committed by government employees. 28 U.S.C. § 2674, *et seq.* However, the United States claims that Kentucky's no-fault statute abolished tort liability with respect to basic reparation benefits. Therefore, it contends that any right of subrogation Safeco may have is necessarily a remedy other than in one tort. Since governmental immunity has been waived only for actions lying in tort, it argues that Safeco

may not recover the $5,248 it paid as basic reparation benefits.

Safeco, on the other hand, contends that the United States is a reparation obligor. It argues that Kentucky's no-fault statute has not abolished tort liability as between two reparation obligors. Safeco reasons that it has a statutory right to recover basic reparation benefits from the United States and that any other reading of the statute is nonsensical.

■ The United States correctly points out that Kentucky's no-fault statute "abolished" tort liability with respect to basic reparation benefits. KRS 304.39–060(2)(a); *See also Dudas v. Kaczmarek,* 652 S.W.2d 868, 870 (Ky.App.1983) (KRS 304.39–060 expressly abolishes tort liability to the extent compensated by basic reparation benefits); *U.S. v. Trammel,* 899 F.2d 1483, 1488–89 (6th Cir.1990) ("upon a careful reading of the Kentucky statute, we conclude that, for the first $10,000 of medical recovery, the Kentucky statute abolishes tort liability."). However, Kentucky courts have held that "the only actions for tort liability abolished by Section .060 of MVRA are those against the owner, registrant, operator or occupant of a motor vehicle. . . ." *Bailey v. Reeves,* 662 S.W.2d 832, 835 (Ky.1984). The statute simply precludes tort recovery for basic reparation benefits from the alleged tort-feasor. KRS 304.39–060(2); *Drury v. Spalding,* 812 S.W.2d 713, 716 (Ky.1991). Safeco seeks subrogation pursuant to KRS 304.39–070(3) which preserves tort liability: "A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person. . . ." KRS 304.39–070(3). Subsection (3) creates a separate right of recovery in the basic reparation obligor. *Ohio Sec. Ins. Co. v. Drury,* 582 S.W.2d 64, 67 (Ky.App.1979). This right, still based on the fault concept, appropriates the responsibility for benefits paid. *Id., see also Affiliated FM Ins. Companies v. Grange Mutual Casualty Co.,* 641 S.W.2d 49, 51 (Ky.App.1982) (KRS 304.39–070(3) provides a mechanism for reimbursement of basic reparation benefits based solely on law of torts).

Accordingly, Kentucky's no-fault statute only abolishes tort liability, to the extent of basic reparation benefits, as between insureds. The concept of fault remains between reparation obligors. Thus, resolution of this matter turns on whether the United States is a "reparation obligor," as asserted by Safeco, or a "secured person," as claimed by the government.

## III

Basic reparation benefits are recoverable from a reparation obligor. KRS 304.39–070(3). They are not recoverable from a secured person. KRS 304.39–070(2). A reparation obligor is defined as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits." KRS 304.39–020(13). A secured person is "the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." KRS 304–39–070(1).

■ We first address whether, under Kentucky law, the United States is a reparation obligor. In order to be so classified, we must find the government to be either (1) an insurer, (2) a self-insurer, or (3) an obligated government. KRS 304.39–020(13).

An insurer is a commercial insurance company with whom a contract for insurance is made. The United States is no such entity. This fact is not disputed. Safeco makes no argument, nor could it, that the United States is an "insurer" within the meaning of Kentucky's no-fault statute.

■ Safeco does argue that the United States is a self-insurer. We do not agree. Kentucky requires that an entity file with the Commissioner of Insurance before it can become a self-insurer. KRS 304.39–080(7). Self-insurance is "subject to approval of the commissioner of insurance" and is not effective until certain documents are filed with the commissioner. *Id.* *See also Employers Ins. of Wausau v. Auto Owners Ins. Co.,* 775 F.2d 774, 776 (6th Cir.1985). In this case, there has been no showing that the United States has met the requirements of Kentucky's self-insurance statutory scheme. Therefore, we

must conclude that the United States is not a self-insurer for purposes of the no-fault statute.

Safeco's citation to *Westfield Cos. v. United States,* 858 F.Supp. 658 (W.D.Mich.1993), does not change our analysis. Although the *Westfield* court found the United States to be a self-insured entity, it specifically did so pursuant to Michigan's no-fault act. Kentucky's no-fault statute is distinguishable. First, Kentucky's statute has the previously discussed filing requirement. Second, Kentucky's act expressly excludes the federal government from its security provisions. KRS 304.39–080(4). Michigan's no-fault act differs, and our examination must be based on Kentucky law.

■ This leaves Safeco with arguing that the United States is an "obligated government." KRS 304.39–080(9) defines an obligated government as "[a]n entity described in subsection (3) or (4) that has provided security pursuant to subsection (6)." Pertinent to this litigation is subsection (4) which provides:

The United States and its public agencies and any other state, its political subdivisions, municipal corporation, and public agencies may provide pursuant to subsection (6), security for the payment of basic reparation benefits in accordance with this subtitle for injury arising from maintenance or use of motor vehicles owned by those entities and operated with their permission.

KRS 304.39–080(4).

The language of KRS 304.39–080(4), its supporting regulations, and relevant case law all indicate that the United States must "opt-in" to Kentucky's no-fault act by providing security:

Any governmental unit, which by appropriate action elects to become an obligated government, may meet its obligations by: (1) providing security by acquiring a contract of insurance, or (2) by providing security merely by obligating itself to pay basic reparation benefits in accordance with KRS Chapter 304, subtitle 39.

806 KAR 39:040(2).

The no-fault act "has introduced a form of compulsory insurance to Kentucky. *Except*

*for governmental agencies,* every owner of a motor vehicle registered or operated in Kentucky must provide 'security' for the payment of 'basic reparation benefits' and the payment of 'tort liabilities.'" *Ammons v. Winklepleck,* 570 S.W.2d 287, 288 (Ky.App. 1978) (emphasis added).

Thus, the United States is exempt from the basic reparation insurance requirements of the no-fault act and can only become an obligated government by opting-in. KY OAG 80–494 (September 8, 1980). The regulations note that the purpose of Kentucky's no-fault is to either require drivers to accept limitation on their tort rights or affirmatively reject the same. 806 KAR 39:040. Governmental units are not subject to the no-fault provisions and are not required to take affirmative action unless they elect to become obligated governments. 806 KAR 39:040(1). As the United States has not affirmatively opted-in to the pertinent statutory provisions, it has not become an obligated government.

■ Having found the United States to be neither an insurer, self-insurer, or obligated government, we must conclude it is not a reparation obligor. Instead, the United States is a "secured person" against whom subrogation is not available. If Brown were individually sued as a tortfeasor, he would be exempt from liability on a subrogation claim for basic reparation benefits. KRS 304.39–070(1), (2). The United States' liability is that of a private person under similar circumstances. 28 U.S.C. § 2674. Since the United States has been substituted as the defendant in lieu of Brown, it follows that it assumes the status of the tort-feasor, who is a secured person. As previously noted, an insurer's right to recovery of basic reparation benefits resides solely against another reparation obligor and not against a secured person.

■ Finally, the statute requires that a secured person be the owner, operator, or occupant of a "secured motor vehicle." KRS 304.39–070(1). "Security covering the vehicle" is defined as insurance or other security so provided. KRS 304.39–080(1). Although the United States is exempt from the financial security provisions of the no-fault act, it

nevertheless provides other security. Such security is not in the form of basic reparation benefits but rather rests in its obligation to be legally responsible for the acts or omissions of its employees. 28 U.S.C. § 2679.

For the foregoing reasons, Safeco's complaint must be dismissed.

An order in accordance with this opinion shall be entered this date.

### ORDER

This matter having come before the court on motion to dismiss by defendant, United States of America, and the court having considered said motion and being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that defendant's motion is **GRANTED**, and plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

There being no just reason for delay in its entry, this is a final and appealable order.